IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GLORIA HILL,<br><br>            Plaintiff,<br><br>vs.<br><br>LIFE LINE SCREENING OF AMERICA, LLC, MICHAELLE L. BAUMERT, and NEBRASKA EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>            Defendants. | 8:21CV161<br><br>**MEMORANDUM AND ORDER** |

Plaintiff, a non-prisoner, has been given leave to proceed in forma pauperis. (Filing 11.) The court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff alleges that she is a 55-year-old Hispanic, Christian woman with a disability and a record of disability. She claims she worked as an ultrasound technician at her employer's Omaha, Nebraska, location from May 14, 2018, to the date of her termination on April 25, 2019, and her performance was satisfactory during that time. Plaintiff alleges that she was "harassed" or "treated poorly" by coworkers and a manager due to her age, national origin, and religion, after which Plaintiff complained (presumably to her employer) twice. Plaintiff states that one of her coworkers harassed her on a daily basis by talking to others about Plaintiff and purposely losing Plaintiff's paperwork. Plaintiff claims that a manager told Plaintiff she was doing things wrong and did not know protocol, as well as talked to other coworkers about Plaintiff in a voice loud enough that patients could hear. After

Plaintiff complained about this treatment, she received a bonus that was half as much as was promised. (Filing 1 at CM/ECF p. 6.)

Plaintiff alleges that she was injured on the job on March 22, 2019, resulting in a doctor's order that she not lift more than 10 pounds, avoid standing for long periods of time, and not load and unload the van.[1] Plaintiff "requested and received medical leave as a reasonable accommodation" after her injury. (Filing 1 at CM/ECF p. 6.) She returned to work from medical leave on April 24, 2019, after her employer verified her doctor's restrictions. Plaintiff claims she was then terminated the next day for the purported reason that she "was not a good fit." (Filing 1 at CM/ECF p. 6.)

Finally, Plaintiff alleges that her employer refused to give her a paycheck for the one day she worked after returning from medical leave and for the "remainder of [her] Paid Time Off leave," claiming that the amount allegedly owed to Plaintiff "went to deductions and they did not owe [Plaintiff] anything." Plaintiff's former employer has also failed to send her a letter she requested six times in order to "take the state boards for a Registered Vascular Technician." (Filing 1 at CM/ECF p. 6.)

Plaintiff complains that because of her national origin, religion, age, and disability, her employer unlawfully terminated her, failed to promote her, subjected her to unequal terms and conditions of employment, and retaliated against her, and that her employer failed to accommodate her disability. Plaintiff makes her claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (Westlaw 2021); the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Westlaw 2021); the Age Discrimination in

---

[1] In one part of Plaintiff's Complaint, she alleges that her disability or perceived disability is: "Doctor advised me not to lift above 50lbs due to backache." (Filing 1 at CM/ECF p. 4.) In another part of her Complaint, Plaintiff says she was placed on "limited duty" by her doctor, consisting of "not lifting more than 10 pounds, not standing for long periods of time, and I was unable to load and unload the van." (Filing 1 at CM/ECF p. 6.)

Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634 (Westlaw 2021); the Nebraska Age Discrimination in Employment Act ("NADEA"), Neb. Rev. Stat. §§ 48-1001, *et seq.* (Westlaw 2021); and the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 to 12117 (Westlaw 2021).

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks and citations omitted). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III.  DISCUSSION

### A.  Exhaustion of Administrative Remedies

To pursue discrimination and retaliation claims under Title VII, the ADA, and the ADEA, a plaintiff must exhaust all administrative remedies. To accomplish this, a plaintiff must seek relief through the Equal Employment Opportunity Commission ("EEOC") or the Nebraska Equal Opportunity Commission ("NEOC"). 42 U.S.C. § 2000e-5(f)(1) (Title VII); 42 U.S.C. § 12117(a) (stating that the remedies and procedures set forth in Title VII, including those pertaining to exhaustion, apply to disability discrimination claims under the ADA); *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("Exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court."). The EEOC/NEOC will then investigate the charge and determine whether to file suit on behalf of the charging party or make a determination of no reasonable cause. If the EEOC/NEOC determines that there is no reasonable cause, the agency will then issue the charging party a right-to-sue notice. 42 U.S.C. § 2000e-5(f)(1). In Title VII and ADA cases, the charging party has 90 days from the receipt of the right-to-sue notice to file a civil complaint based on her charge. 42 U.S.C. § 2000e-5(f)(1).

Here, the right-to-sue letter attached to the Complaint is dated November 16, 2020. (Filing 1 at CM/ECF p. 9.) The Complaint alleges that Plaintiff received the right-to-sue letter on November 22, 2020. (Filing 1 at CM/ECF p. 7.) She had 90 days from her receipt of the letter—or until February 22, 2021[2]—to file a lawsuit under Title VII and the ADA. It appears she did so, as Plaintiff has attached to her Complaint letters from the Douglas County District Court dated February 23, 2021, and March 4, 2021, indicating that Plaintiff twice attempted to file her Complaint entitled "United States District Court" in that court, but she was directed to either send them to the proper court or properly prepare a petition and pay the filing fee in order to initiate a lawsuit in the Douglas County District Court. (Filing 1 at CM/ECF

---

[2] Ninety days from November 22, 2020, was actually February 20, 2021, which was a Saturday. The next business day was February 23, 2021.

pp. 12-13.) For purposes of this initial review only, I shall assume Plaintiff exhausted her administrative remedies. Whether such exhaustion actually occurred is an issue that can be raised during motion practice should service of process eventually be ordered.

### B. Proper Defendants

The Defendants in this case include Michaelle L. Baumert, a lawyer at the Jackson Lewis law firm in Omaha, Nebraska, and the Nebraska Equal Employment Opportunity Commission. Because the federal laws under which Plaintiff seeks to bring her claims apply to the actions of "employers," and because Defendants Michaelle L. Baumert and the Nebraska Equal Employment Opportunity Commission are not alleged to be Plaintiff's employers, these Defendants will be dismissed from this action. *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1079 (8th Cir. 2006) ("Title VII addresses the conduct of employers only"); *Coleman v. Jass*, No. 8:13CV82, 2013 WL 4041860, at *2 (D. Neb. Aug. 8, 2013) (coworkers and supervisors may not be held personally liable under ADEA because ADEA authorizes suits against "employers"; collecting cases); *Smith v. PayPal, Inc.*, No. 8:12CV226, 2013 WL 2444032, at *8 (D. Neb. June 4, 2013) (NADEA's express terms limit liability to "employers"); 42 U.S.C. § 12111(2) (the ADA only applies to employers, employment agencies, labor organizations, and joint labor-management committees); Neb. Rev. Stat. § 48-1104 (the NFEPA prohibits "employers" from committing unlawful employment practices).

### C. National-Origin & Religious Discrimination (Title VII/NFEPA)

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination claims arising under the NFEPA are analyzed in the same manner as discrimination claims arising under Title VII. *See Edwards v. Hiland Roberts Dairy, Co*., 860 F.3d 1121, 1124 n.3 (8th Cir. 2017).

5

Plaintiff alleges she was discriminated against based on her national origin and religion. Discrimination "because of" one's national origin or religion within the meaning of 42 U.S.C. § 2000e-2(a)(1) means that "a particular outcome would not have happened 'but for' the purported cause"—which here is Plaintiff's national origin and religion. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020). "When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff's [national origin or religion] was one but-for cause of that decision, that is enough to trigger the law." *Id*.

The court looks to the elements of a prima facie case of discrimination in assessing whether Plaintiff has pled enough facts to make entitlement to relief plausible. To state a prima facie claim of discrimination, Plaintiff must allege facts showing that (1) she is a member of a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of intentional discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011); *see also Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019); *Tyler v. University of Arkansas Board of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011).

Here, Plaintiff alleges that she is Hispanic and Christian—protected classes— and she was terminated from her employment—an adverse employment action. Plaintiff alleges that her performance was satisfactory during her term of employment, but she also alleges that a manager told Plaintiff she was doing things wrong and did not know protocol, indicating that she was *not* meeting her employer's legitimate expectations. Further, Plaintiff simply declares that she was discriminated against because of her national origin and religion, but alleges no facts giving rise to an inference that such factors were a but-for cause of her termination. *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."

(internal quotation marks and citation omitted)). Therefore, Plaintiff has failed to state a national-origin or religious-discrimination claim upon which relief can be granted. However, the court will permit Plaintiff to amend her Complaint to make such factual allegations, if they exist.

### D.  Disability Discrimination (ADA/NFEPA)

Plaintiff also alleges that she was discriminated against based on her disability. The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" must be able to perform the essential functions of the employment position, with or without reasonable accommodation. 42 U.S.C. § 12111(8). "Disability" under the ADA means that the individual (a) has a physical or mental impairment that substantially limits one or more major life activities; (b) has a record of such an impairment; or (c) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(2). "An individual may establish coverage under any one or more of these three prongs of the definition of disability. . . ." 29 C.F.R. § 1630.2(g)(2).

As is relevant to this case, a "physical impairment" is a "physiological disorder or condition . . . affecting one or more body systems, such as neurological [or] musculoskeletal . . . ." 29 C.F.R. § 1630.2(h)(1). "Major life activities" include, but are not limited to, "performing manual tasks . . . standing, . . . lifting, . . . and working . . ." 29 C.F.R. § 1630.2(i)(1)(i). "Major" is "not [to] be interpreted strictly to create a demanding standard for disability." 29 C.F.R. § 1630.2(i)(2). Whether a physical impairment "substantially limits" a major life activity is to "be construed broadly in favor of expansive coverage . . . . 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Deciding "whether an impairment

'substantially limits' a major life activity should not demand extensive analysis"; requires an "individualized assessment"; and requires applying a lower standard than that applied to the phrase "substantially limits" prior to the enactment of the ADA Amendments Act of 2008.[3] 29 C.F.R. § 1630.2(j)(1)(iii, iv). Finally, "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" within the meaning of the ADA. 29 C.F.R. § 1630.2(j)(1)(ix).

The NFEPA makes it an unlawful employment practice for an employer to "discharge[] or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment[] because of such individual's . . . disability . . . ." Neb. Rev. Stat. § 48-1104. "The disability discrimination provision[s] in the NFEPA are patterned after the ADA, and the statutory definitions of 'disability' and 'qualified individual with a disability' contained in the NFEPA are virtually identical to the definitions of the ADA." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 777 n.3 (8th Cir. 2012) (internal quotation marks and citation omitted); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1106 n.2 (8th Cir. 2016); *see* Neb. Rev. Stat. §§ 48-1102(9) & (10).

As noted above, in one part of Plaintiff's Complaint, she alleges that her disability or perceived disability is that her "Doctor advised me not to lift above 50lbs due to backache." (Filing 1 at CM/ECF p. 4.) In another part of her Complaint, Plaintiff says that after she was "injured on the job" on March 22, 2019, she was placed on "limited duty" by her doctor, consisting of "not lifting more than 10 pounds, not standing for long periods of time, and I was unable to load and unload the van." (Filing 1 at CM/ECF p. 6.) According to Plaintiff, she "requested and received medical leave as a reasonable accommodation" after her injury, and she returned to work on April 24, 2019. (*Id.*) However, she was terminated from her job

---

[3] The ADA Amendments Act of 2008, which broadened the definition of a "disability," became effective January 1, 2009. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008).

one day later for the purported reason that she "was not a good fit." (*Id.*) She also claims she was not paid for one day of work after she returned from medical leave and for her "Paid Time Off."

To establish a claim of discrimination under the ADA, a plaintiff must demonstrate that she (1) "was disabled within the meaning of the ADA; (2) that [she] was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) a causal connection between an adverse employment action and the disability." *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 545 (8th Cir. 2021) (internal quotation marks and citation omitted).

Liberally construed, Plaintiff plausibly alleges facts indicating that she had a disability within the meaning of the ADA (a back injury/condition that affected her musculoskeletal system and substantially limited her ability to perform manual tasks, stand, lift, carry, and work); she received a reasonable accommodation for such disability (a month of medical leave); and she was discriminated against for having a disability or for taking advantage of the accommodation by being terminated from her job within one day of returning from such leave.

However, Plaintiff has not alleged that she was qualified to perform the essential functions of her job with or without a reasonable accommodation. The two-part test for determining whether an individual is "qualified" within the meaning of the ADA are (1) "whether the individual possesses the requisite skills, education, certification or experience necessary for the job" and (2) "whether the individual can, despite [her] impairments, perform the essential functions of the job either with or without reasonable accommodation," with essential functions being "the fundamental job duties of the employment position." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 923 (8th Cir. 2018) (internal quotation marks and citations omitted). Here, because Plaintiff performed her job for almost one year before being terminated, her allegations allow an inference that she possessed the necessary skills, educations, certification, and experience to perform her job. However, Plaintiff has not alleged facts sufficient to satisfy the second element—

9

that is, whether her physician's limitations still applied after she returned to work and whether, when she returned from medical leave, she could perform the essential functions of her job with those limitations. *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 546 (8th Cir. 2018) ("an employee invoking ADA protection must show she can perform her essential job functions *at the time of* her termination" (internal quotation marks and citation omitted; emphasis in original)).

The Plaintiff will be given leave to amend her Complaint to allege facts showing that she was able to perform the essential functions of her job, with or without reasonable accommodation, at the time of her termination.

### E.  Age Discrimination (ADEA/NADEA)

Plaintiff asserts an age-discrimination claim under the ADEA and the Nebraska ADEA. The ADEA protects individuals over 40 years of age and prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a); *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010). "[T]he Nebraska ADEA is so closely patterned after the federal ADEA that Nebraska courts look to federal law when deciding Nebraska ADEA claims." *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 765 (8th Cir. 2021).

The court looks to the elements of a prima facie case of discrimination in assessing whether Plaintiff has pled enough facts to make entitlement to relief plausible. To set forth a prima facie claim of age discrimination, a plaintiff must establish that (1) she is over 40 years of age; (2) she met the applicable job qualifications; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the class were treated more favorably. *Anderson*, 606 F.3d at 523; *see also Faulkner v. Douglas Cty. Nebraska*, 906 F.3d 728, 734 (8th Cir. 2018). Under the ADEA, "age must be the 'but-for' cause of the employer's

decision." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011).

Plaintiff alleges that she is over 40 years of age and that she suffered adverse employment actions in the form of a reduced bonus, refusal to pay earned compensation, and termination. She broadly declares that these adverse actions were due in part to her age. By virtue of the fact that Plaintiff performed her job for almost one year before being terminated, her allegations also allow an inference that she met the applicable job qualifications. However, Plaintiff fails to allege facts indicating that employees in similar circumstances who were under 40 years of age were treated more favorably—i.e., employees with similar medical restrictions received full bonuses, were not deprived of earned compensation, and were not terminated. *See Faulkner*, 906 F.3d at 734 (comparator in age-discrimination case was not similarly situated because comparator was released by her physicians with no restrictions, unlike the plaintiff, who had several lifting, pushing, pulling, and overhead-work restrictions).

The Plaintiff will be given leave to amend her Complaint to allege facts showing that similarly situated employees who were under 40 years of age were treated more favorably.

**F.  Retaliation (all Acts)**

The ADA, Title VII, the NFEPA, the ADEA, and the NADEA prohibit retaliation. 42 U.S.C. § 12203(a) (prohibiting discrimination (i.e. retaliation) because an individual "has opposed any act or practice made unlawful by" the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA); 42 U.S.C. § 2000e-3(a) (prohibiting discrimination (i.e. retaliation) because an employee or applicant "has opposed any practice made an unlawful employment practice by" Title VII or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII); Neb. Rev. Stat. § 48-1114(1) (it is unlawful

for an employer to discriminate (i.e. retaliate) against an employee because she has "opposed any practice made an unlawful employment practice by the [NFEPA]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the [NFEPA] . . . ."); 29 U.S.C. § 623(d) (ADEA); Neb. Rev. Stat. § 48-1004(4) (NADEA).

To establish a prima facie case of retaliation under these acts, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016) (internal quotation omitted) (Title VII retaliation); *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 924 (8th Cir. 2018) (ADA); *Knapp v. Ruser*, 901 N.W.2d 31, 48 (Neb. 2017) (NFEPA).

Plaintiff alleges that because she requested and took medical leave as a reasonable accommodation for her back injury, her employer terminated her from her employment within a day of returning from such leave, and her employer also failed to pay her compensation she previously earned. This sufficiently alleges a retaliation claim under the ADA and the NFEPA, although solely relying on the temporal proximity between Plaintiff taking medical leave and her termination may ultimately prove inadequate to prove causation. *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (temporal proximity between protected conduct and adverse action must be "very close" for timing alone to support finding of causation for retaliation under ADA); *Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013) (ten days between state employee's letter requesting that supervisor "respect" her medical leave time and employee's termination was insufficient, standing alone, to raise inference of causation, as would support prima facie case of retaliation under ADA); *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 908 (8th Cir. 2010) (requesting reasonable accommodation is protected activity under ADA). After initial review of Plaintiff's amended complaint, Plaintiff's ADA/NFEPA retaliation claim may proceed to service of process along with any other viable claims.

Plaintiff's Complaint also states that before her termination, she "complained" about her coworkers harassing her due to her age, national origin, and religion; she "filed a harassment complaint" with the regional operations leader about one of her coworkers; and she "informed . . . via email" the regional operations leader of her experience with a clinical manager who told Plaintiff she was doing things wrong and didn't know protocol and talked about Plaintiff to other employees. (Filing 1 at CM/ECF p. 6.) Very liberally construed, and for purposes of initial review only, these complaints to management opposing harassment based on Plaintiff's age, national origin, and religion consist of "protected conduct" under Title VII and the ADEA. *Wallace v. Interbake Foods, LLC*, 973 F. Supp. 2d 1067, 1081 (D.S.D. 2013) ("Complaints to management or objections to harassment can be protected conduct."); *Van Horn v. Specialized Support Servs., Inc.*, 241 F. Supp. 2d 994, 1010 (S.D. Iowa 2003) ("An employee is privileged to oppose workplace discrimination both by the filing of formal charges and by informal action including making informal complaints to management . . . ."; "There is no question that [Plaintiff's] repeated complaints to [her employer] about the conduct of her client constituted protected activity" for purposes of Title VII).

Further, Plaintiff alleges that she suffered the adverse employment actions of termination and reduced compensation after this protected activity and that her complaints (along with her use of medical leave) caused these adverse actions. Like Plaintiff's ADA retaliation claim discussed above, I conclude that these allegations, although sparse, sufficiently allege a retaliation claim under Title VII, the ADEA, and companion Nebraska acts, although solely relying on the temporal proximity between Plaintiff complaining to her employer and her termination and reduction of pay may ultimately prove inadequate to prove causation. After initial review of Plaintiff's amended complaint, Plaintiff's Title VII, NFEPA, ADEA, and NADEA retaliation claims may proceed to service of process along with any other viable claims.

## IV. CONCLUSION

For purposes of initial review only, Plaintiff's Complaint states retaliation claims under the ADA, Title VII, the NFEPA, the ADEA, and the NADEA. However, Plaintiff's Complaint fails to state a plausible claim for relief for national-origin or religious discrimination, disability discrimination, and age discrimination. The court on its own motion will grant Plaintiff leave to file an amended complaint that sufficiently alleges discrimination claims upon which relief may be granted. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, Plaintiff's discrimination claims will be dismissed without prejudice, and Plaintiff's retaliation claims will proceed to service of process.

IT IS ORDERED:

1.  Defendants Michaelle L. Baumert and the Nebraska Equal Employment Opportunity Commission are dismissed without prejudice, and such parties shall no longer be parties to this action.

2.  Plaintiff's Complaint states retaliation claims under the ADA, Title VII, the NFEPA, the ADEA, and the NADEA. However, Plaintiff's Complaint fails to state plausible claims for relief for national-origin or religious discrimination, disability discrimination, and age discrimination. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the dismissal of Plaintiff's discrimination claims without prejudice, and Plaintiff's retaliation claims will proceed to service of process.

3.  Plaintiff's amended complaint shall consist of relevant allegations from her original Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into **one document** may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, her prior pleadings.

4.  The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e) in the event she files an amended complaint.

5.  The Clerk of the Court is directed to set a pro se case management deadline using the following text: October 27, 2021—amended complaint due.

6.  Plaintiff shall keep the court informed of her current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

DATED this 27th day of September, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge